Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. National Union Fire c/o Liberty Bell Agency was the carrier on the risk at all times relevant herein.
4. The date of injury is 4 May 1995.
5. Plaintiff's compensation rate was $478.00, which was the maximum compensation rate for 1995.
6. The parties stipulated that plaintiff has been out of work since 4 May 1995 and continues to receive temporary total disability benefits.
7. The parties stipulated to plaintiff's medical records from Firsthealth Family Care Center, Pinehurst Surgical Clinic, P.A., Sandhills Neurologists, P.A., Dr. Robert Elkins, Page Rehabilitation Services, Inc., Pro Med Client Services, Pinehurst Neurology, P.A., Cape Fear Valley Medical Center, and Moore Regional Hospital.
 ***********
Based upon all the evidence adduced from the record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 47 years old and employed as a truck driver by defendant-employer. Plaintiff began working for defendant-employer in 1993.
2. Prior to 4 May 1995, plaintiff had suffered back problems. In 1981, plaintiff reported that he sought medical care for persistent back problems. Again, in 1987, plaintiff suffered a back injury while lifting materials at work. He was taken out of work for a period of nine months, but did not undergo any type of surgical intervention.
3. On 4 May 1995, plaintiff was in the course of driving a tractor-trailer for defendant-employer when he stopped at a truck stop. On his way to the shower, plaintiff slipped on the wet floor and fell to the ground. Thereafter, he felt pain in his neck and lower back.
4. Defendant-employer accepted compensability of this injury by paying temporary total disability benefits. No Industrial Commission Form 21 was entered into between the parties; however, defendant's voluntary payment of compensation constitutes an admission of liability.
5. Plaintiff complained of neck and back pain after his injury. After plaintiff completed his truck route and returned home, he went to the emergency room at Moore Regional Hospital.
6. On 8 May 1995, plaintiff presented to his local primary care facility complaining of back and neck pain. Dr. Ed Carey examined plaintiff. Dr. Carey diagnosed plaintiff with lumbosacral strain and prescribed anti-inflammatory medication. Initially, plaintiff's condition seemed to improve.
7. Plaintiff was evaluated by Dr. Shupeck on 26 June 1995. Dr. Shupeck diagnosed plaintiff with musculoskeletal pain with multiple diffuse symptoms. He recommended that plaintiff undergo physical therapy to alleviate his symptoms. After a regimen of physical therapy, Dr. Shupeck found that plaintiff still had residual lower back pain and give-way weakness in his right leg; however, plaintiff's neurological examination was stable and his strength intact. A bone scan performed on 18 August 1995 was normal. By 23 October 1995, plaintiff was improving. He was able to perform yard work without complaints of pain, able to walk long distances without any giving way of his right leg and able to drive for at least 45 minutes.
8. Sometime thereafter, plaintiff's condition deteriorated with plaintiff complaining of increased weakness in his right leg. Dr. Shupeck ordered a myelogram and CT scans to rule out any disc problems. These tests were unremarkable, indicating some degenerative changes but no herniated discs.
9. Plaintiff was referred to a neurologist for another opinion as to his condition. Dr. Bruce Solomon examined plaintiff on 13 December 1995. Dr. Solomon's examination of plaintiff was normal and he diagnosed plaintiff with chronic low back pain due to plaintiff's subjective complaints of back pain. Dr. Solomon noted that many of plaintiff's symptoms were not physiologic and recommended a neuropsychological examination. In Dr. Solomon's opinion, plaintiff's sensory examination did not follow any pattern and his gait problems were clearly not typical of any neurological disease. Dr. Solomon ordered additional MRI's of the lower thoracic spine and lumbar spine for completeness, both of which were generally normal with mild degenerative changes.
10. Dr. Solomon referred plaintiff to the Fayetteville Pain Clinic for management of plaintiff's continued symptoms. Plaintiff was initially evaluated at the Cape Fear Valley Pain Management Center on 21 February 1996. At that time, it was noted that plaintiff complained of stiffness in his neck, give-way weakness in his right leg and weakness in his left arm. A plan was established in which plaintiff was to receive nerve block injections, trigger point injections and physical therapy.
11. Plaintiff underwent one series of nerve block injections and trigger point injections and although the Pain Clinic doctors recommended additional injections, plaintiff refused this treatment. On 26 November 1996, Dr. Kenneth Oswalt discharged plaintiff from the Pain Clinic, finding that plaintiff was "very functional" in spite of the pain. He further found that plaintiff had maximized his rehabilitation and had reached maximum medical improvement. Dr. Oswalt found no evidence of any functional disability or any permanent impairment.
12. On 27 February 1997, plaintiff returned to his family physician, Dr. Lam, for follow-up treatment and medication management. Dr. Lam continued to monitor plaintiff's condition, noting that his condition was generally unchanged during this period of time.
13. On 2 June 1998, plaintiff received an evaluation from Dr. Mark E. Brenner at the Pinehurst Surgical Center. Dr. Brenner found that plaintiff was exhibiting symptoms consistent with a myofascial pain syndrome. However, plaintiff's objective findings did not correlate with his subjective complaints. Dr. Brenner found that plaintiff was able to return to full-time work with some restrictions, specifically no lifting greater than 50 pounds and no bending, stooping, crawling and long distance truck driving. Dr. Brenner found that plaintiff had reached maximum medical improvement and that the objective findings from the examination did not support any permanent disability rating.
14. Plaintiff was also seen for an independent medical evaluation by Dr. Robert Elkins, an orthopaedic specialist, on 24 June 1999. Dr. Elkins performed a complete physical examination on plaintiff and noted many instances of symptom magnification and pain accentuation. Based on his examination of plaintiff and the medical records which he reviewed, Dr. Elkins diagnosed plaintiff with low back pain by history, moderate symptom magnification and pain accentuation, probable malingering and a conversion reaction and/or psychophysiologic disorder. Dr. Elkins did not recommend any further treatment and could not find an orthopaedic basis for restricting plaintiff from further employment. Dr. Elkins also found that plaintiff's condition did not warrant any permanent disability rating.
15. Plaintiff was ultimately referred and examined by Dr. David P. Fedder, an orthopaedic specialist, on 22 September 1998. At the time of this examination, plaintiff complained of give-way weakness in his right leg. Dr. Fedder ordered nerve conduction studies, EMG/NCV, in order to determine the cause for plaintiff's problems. These studies, which were performed on 26 October 1998, indicated evidence of an acquired sensory motor neuropathy with axonal and demyelinating features. Based on the results of this study, Dr. Fedder referred plaintiff to Dr. Henry Tellez, a neurologist.
16. Dr. Tellez began treating plaintiff on 4 December 1998. By examination and the performance of a series of laboratory work, Dr. Tellez diagnosed plaintiff with Chronic Inflammatory Demyelinating Polyneuropathy, CIDP, a neurological disorder which affects the nerves and causes damage not only to the nerves but also to their covering.
17. Dr. Tellez opined that CIDP is not associated with nor caused by trauma and that plaintiff's CIDP was not caused by plaintiff's work-related injury of 4 May 1995. Dr. Tellez further stated that CIDP cannot be aggravated or exacerbated by trauma and that plaintiff's fall in May 1995 was not a significant contributing factor to his current neurological condition, CIDP.
18. Plaintiff suffered from problems with pain and weakness in his lower extremities prior to his work related injury on 4 May 1995. Nine months prior to plaintiff's fall at work, plaintiff sought treatment from Dr. Lam for a balance and gait problem. At that time, plaintiff noted that his balance and gait were a life-long problem which had worsened within the last few months.
19. Plaintiff's CIDP pre-existed plaintiff's injuries suffered as a result of his fall on 4 May 1995. Plaintiff's current disability is caused by his neurological condition, CIDP.
20. The competent evidence in the record establishes that plaintiff no longer suffers from any condition which may be related to his fall of 4 May 1995. Plaintiff's continued complaints are related to his neurological condition, CIDP, and are not associated with any type of injury that may be related to his fall in May 1995.
21. Due to plaintiff's CIDP, permanent restrictions have been placed on his ability to work. These restrictions include: no working at heights, avoiding extreme changes in temperature, no prolonged standing, no stooping, no bending, light lifting, no skillful manipulations with fingers and hands, no commercial driving and no driving over two hours per day. Notwithstanding these restrictions, plaintiff is able to return to gainful employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffers from a rare neurological disorder which has been diagnosed as Chronic Inflammatory Demyelinating Polyneuropathy (CIDP), and which pre-existed plaintiff's injuries suffered as a result of his fall on 4 May 1995. In the instant case, the competent evidence is insufficient to establish that plaintiff's current condition is related to any type of injury that plaintiff may have sustained related to his fall in May 1995. Plaintiff's fall in May 1995 was not a significant contributing factor to his current condition, nor did the fall aggravate or exacerbate plaintiff's condition; therefore, plaintiff is not entitled to continuing compensation under the Act. N.C. Gen. Stat. § 97-2.
2. Since no Industrial Commission Form 21 Agreement was entered into by the parties, plaintiff retains the burden of proving the nature and extent of his disability and that this disability is causally related to his work-related injury on 4 May 1995. However, plaintiff failed to carry his burden of proof in this case and therefore, he is not entitled to continuing benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-employer's Motion to terminate plaintiff's benefits under the Workers' Compensation Act is hereby GRANTED.
2. Plaintiff is not entitled to further weekly indemnity or medical benefits as his current condition and disability were not caused, aggravated, exacerbated or otherwise related to his work-related injury of 4 May 1995.
3. Each side must pay its own costs, except defendants shall pay expert witness fees in the amount of $470.00 to Dr. Elkins, $195.00 to Dr. Tellez and $310.00 to Dr. Lam.
This the ___ day of September, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER